PROST, Circuit Judge,
dissenting-in-part.
I join the majority opinion except for Part III of the Analysis section, from *1349 which I respectfully dissent. In Part III, the majority concludes that it is necessary to remand this case so that the Board can determine whether the Contracting Officer’s (“CO’s”) July 27, 2001 decision letter amounted to a “ratification” of certain changes directed by the Project Manager. I do not think a remand is necessary, and would hold that the CO’s July 27, 2001 decision letter does not constitute a ratification of the Project Manager’s unauthorized change orders.
As the majority points out, the CO issued his July 27, 2001 decision letter over a year after Cath-Dr/Balti Joint Venture’s (“Cath’s”) performance of the contract was complete and in response to Cath’s certified claim for costs allegedly incurred performing thirty-seven tasks not required by the contract. In that letter, the CO denied most of Cath’s claims, in almost all instances, because he found that the alleged “extra” work was, in fact, required by the contract. Because Cath had no basis to recover additional compensation for work required by the contract, the CO determined that there was “no entitlement” for those claims and stated that his decision regarding those claims was final. For the remainder of the claims — including claims 7, 33, and 37 — the CO recommended that Cath negotiate a settlement with the Resident Officer in Charge of Construction (“ROICC”) and asked that Cath’s “request for a final decision on these issues be held in abeyance subject to further discussions with the ROICC.”
The majority now remands claims 7, 33, and 37 for the Board to determine whether the CO’s July 27 decision letter constituted a “ratification” of the unauthorized orders of the Project Manager. But under these circumstances, I do not believe there are material factual disputes that require a remand. The only evidence of ratification pointed to by Cath is the CO’s July 27 decision letter, the content of which is undisputed. And I think there are at least three reasons why that decision letter is insufficient to require the government to pay Cath for claims 7, 33, and 37.
First, I do not believe that the CO’s decision letter demonstrates the CO’s adoption of the Project Manager’s unauthorized change orders. Instead, I view the decision letter as simply an attempt by the CO to settle those claims for which he believed that Cath performed work outside of the contract. See John Cibinic, Jr., Ralph C. Nash, Jr., & James F. Nagle, Administration of Government Contracts 1286-89 (4th ed. 2006) (“Negotiated settlements ... frequently take place following assertion of the claim and prior to the formal rendering of a final decision.”). Indeed, the CO’s decision letter recommended further negotiations for all of the claims in which he found that additional work had been performed, regardless of whether that work had been ordered by the Project Manager.[1] Thus, read in the context of the rest of the letter, the CO’s decision to recommend further negotiations on claims 7, 33, and 37 represents, at most, his recognition that the work described in those claims fell outside of the contract. Accordingly, while Cath characterizes the CO’s decision letter as either a knowing adoption of the Project Manager’s *1350 unauthorized change orders or a conclusive determination by the CO that Cath should be paid for these claims, I do not believe either conclusion is warranted.
Second, while the CO may have initially thought that Cath was entitled to compensation for any additional work it performed, neither the Armed Services Board of Contract Appeals, nor this court, is bound by the legal determinations of the CO. And as the majority opinion points out, the changes directed by the Project Manager are not binding on the government because the Project Manager did not have the authority to direct compensable changes.
Third, the contract states that “[i]n no event ... will any understanding or agreement, modification, change order, or other matter deviating from the terms of the contract between the contractor and any person other than the Contracting Officer be effective or binding on the Government, unless formalized by proper contractual documents executed by the Contracting Officer prior to completion of this contract.” While this provision appears to contemplate that changes directed by an unauthorized government official may later be ratified by the CO and therefore become binding on the government, this provision means that the government will only be bound by changes adopted by the CO prior to the completion of the contract and formalized in proper contractual documents. In this case, the alleged ratification does not appear to have met either of these requirements.[2]
For these reasons, I respectfully dissent.

. For example, the CO found that the tasks described in claims 30 and 31 fell outside of the contract and recommended further negotiations on these claims even though it appears that no government official ordered Cath to perform either of those tasks. See Cath-dr/Balti Joint Venture, ASBCA Nos. 53581, 54239, 05-2 BCA ¶ 33046, Op. at 67-69 (Aug. 17, 2005).

. This is not to suggest that the government would not be bound by a settlement entered into after completion of the contract. The July 27 decision letter, however, does not settle Cath’s claims — it merely recommends further negotiations.